# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| D.H., and M.H.,<br><br>      Plaintiffs,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD of ILLINOIS, and WIRTZ CORPORATION HEALTH CARE PLAN,<br><br>      Defendants. | **ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Case No. 2:21-CV-00334-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on a partial motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), brought by Defendants Blue Cross and Blue Shield of Illinois, an unincorporated division of Health Care Service Corporation ("Blue Cross"), and Wirtz Corporation, sponsor of the Wirtz Corporation Health Care Plan ("the Plan"), (collectively, "Defendants") to dismiss Count II of D.H and M.H.'s (collectively, "Plaintiffs") Amended Complaint. Count II is Plaintiffs' claim that Defendants violated the Mental Health Parity and Addiction Equity Act ("MHPAEA"). The court held a hearing on the motion on April 21, 2022. At the hearing, Defendants were represented by Rebecca R. Hanson and Bradley R. Blackham. Plaintiffs were represented by Brian S. King. The court has carefully considered the memoranda submitted by the parties, the arguments made by counsel at the hearing, and the law and facts relating to this matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

1

## BACKGROUND

Teenaged M.H. suffered from chronic depression, anxiety, borderline personality disorder, and compulsive traits. Although she received various treatments, none so far had been successful. Then, after experiencing a sexual assault, M.H. attempted suicide. M.H.'s father admitted M.H. to La Europa Academy ("La Europa"), a treatment facility that provides sub-acute inpatient treatment to adolescents and young adults with mental health, behavioral, and/or substance abuse problems. After receiving treatment at La Europa for nearly a year, M.H. was transferred to Mosaic House ("Mosaic"), a subsidiary of La Europa that also provides sub-acute inpatient treatment to adolescents and young adults with mental health, behavioral, and/or substance abuse problems. M.H. received treatment at Mosaic for another three-and-a-half months.

Blue Cross denied payment for M.H.'s treatment at both La Europa and Mosaic. Blue Cross stated that it denied payment for La Europa because it had not received requested information, preauthorization was not requested, and the service was excluded from the Plan. Blue Cross likewise justified its denial for Mosaic on the basis that the service was excluded from the Plan.

M.H.'s father, D.H., appealed Blue Cross's denials. Blue Cross, however, did not respond to D.H.'s La Europa appeal. Over the phone, Blue Cross told D.H. that it would not process the La Europa appeal because La Europa did not meet the definition of a residential treatment center. On review, Blue Cross upheld the denial of payment for M.H.'s treatment. Blue Cross stated that benefits were denied because "Supervised Living" was not a Plan benefit, and D.H. had not obtained preauthorization for the services.

M.H. and D.H. filed suit against Blue Cross and the Plan seeking recovery of their benefits under the Employee Retirement Income Security Act ("ERISA"). After filing suit, Defendants made pretrial disclosures and produced the prelitigation record, which included Blue Cross's internal notes. Those internal notes showed that Blue Cross denied payment to La Europa in large part because it determined that La Europa's license was "invalid" as it did not have a 24-hour nursing and physician presence. Plaintiffs assert these internal notes also reveal that Blue Cross has a pattern of requiring acute symptomology when evaluating care for sub-acute mental health treatment, including for treatment that predated M.H.'s admissions to La Europa and Mosaic.

Based on this information, M.H. and D.H. amended their complaint on January 17, 2022 to add a MHPAEA claim. In this claim, Plaintiffs allege Defendants violated the MHPAEA "because the terms of the Plan and the medical necessity criteria utilized by the Plan . . . limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes . . . used to limit coverage for medical/surgical treatment in the same classification." For this claim, Plaintiffs also refer to M.H.'s prior treatment at an unknown level of care from 2017, although they do not seek relief for this service.

Defendants now seek dismissal of Plaintiffs' MHPAEA claim. Defendants argue that the court should dismiss Plaintiffs' cause of action because the allegations of fact do not sufficiently show a nexus between Blue Cross's application of medical necessity criteria and the benefit denials to La Europa and Mosaic. Plaintiffs oppose this motion, contending that their complaint includes enough factual detail to render their MHPAEA claim plausible.

## DISCUSSION

*Standard of Review*

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in a complaint and views them in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "need not take as true the complaint's legal conclusions." *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011). To withstand a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to rise above the speculative level and state a plausible claim for relief. *Iqbal*, 556 U.S. at 666.

*Count II of Plaintiffs' Amended Complaint – the MHPAEA Claim*

The MHPAEA requires that "treatment limitations applicable to . . . mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). There are two types of treatment limitations under the MHPAEA – quantitative limitations and nonquantitative treatment limitations ("NQTLs"). Plaintiffs have alleged a violation of NQTL requirements under the MHPAEA.

An NQTL is a limitation on "the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). NQTLs include "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id*. § 2590.712(c)(4)(ii)(H). The MHPAEA does not prohibit all NQTLs. A health plan complies with the MHPAEA so long as the "processes, strategies, evidentiary standards, or other factors" the health plan uses to apply

4

the NQTL "are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors" the health plan uses to apply the NQTL to medical/surgical benefits in the same classification. *Id*. § 2590.712(c)(4)(i).

To assess the MHPAEA's parity requirements, the implementing regulations provide that the mental health or substance abuse care and the medical or surgical care must be "in the same classification," of which there are six: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *Id*. at § 2590.712(c)(2)(i)-(ii)(A). Within any particular classification, a plan's disparate treatment limitations can violate the MHPAEA facially or as-applied. *See Kurt W. v. United Healthcare Ins. Co.*, 2019 U.S. Dist. LEXIS 215210, at *4 (D. Utah 2019); *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1235-36 (D. Utah 2019).

In order for Plaintiffs to withstand Defendants' motion to dismiss the MHPAEA claim, Plaintiffs are required to have alleged, with sufficient factual support, the following: (1) the relevant group health plan is subject to the MHPAEA; (2) the plan provides both medical/surgical and mental health or substantive use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits – this can be a facial disparity in the plan or disparity as-applied; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared. *See Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019); *see also Kurt W.*, 2019 U.S. Dist. LEXIS 215210, at *4. Further, to properly allege this claim, Plaintiffs must have established a nexus between the alleged MHPAEA violation and the adverse benefits determination at issue. *See Christine S. v. Blue Cross Blue Shield of New Mexico*, 2021 WL

4805136, at *9 (D. Utah 2021). Plaintiffs cannot establish a MHPAEA violation if the alleged disparate limitation on the mental health/substance use disorder treatment is immaterial to the Plans' decision to deny coverage. *James C. v. Anthem Blue Cross and Blue Shield*, 2021 WL 2532905, at *19 (D. Utah 2021).

*Nexus Analysis*

As an initial matter, counsel for Plaintiffs conceded in the hearing on this matter that the MHPAEA claim does not apply to the decision concerning M.H.'s treatment at Mosaic. Accordingly, the court dismisses up front any aspect of the claim that may have been interpreted to involve Mosaic. The court will now proceed to decide whether Plaintiffs' MHPAEA claim was sufficiently pled by performing a nexus analysis with regard to the La Europa treatment at issue and the MHPAEA claim.

The primary issue with Plaintiffs' MHPAEA claim regarding the La Europa benefits determination is that Plaintiffs have pled no allegations in this case that Blue Cross applied or relied on any medical necessity criteria to make the adverse benefits determination relating to La Europa, and yet Plaintiffs' assertions and factual support regarding MHPAEA violations all pertain to medical necessity. This is true even in regards to Plaintiffs' licensing argument about the La Europa benefits determination, which was that: "*When it assesses the medical necessity of medical or surgical care* [Blue Cross] does not consider licensure to be "invalid" when a set of proprietary internal requirements are not met." (ECF No. 17 at ¶ 54) (emphasis added). This is still a medical necessity argument, even though this is not a medical necessity case. Put simply, there is no nexus between Plaintiffs' MHPAEA claim and the benefits determinations in this case. Thus, this claim cannot survive the current motion to dismiss.

As addressed in the hearing, Plaintiffs should have pled in their MHPAEA claim that there is disparate language in the Plan regarding facility qualifications. In order to fix this, Plaintiffs have asked the court – in the event of a decision to dismiss Count II – to dismiss this claim without prejudice so that Plaintiffs can do more discovery to support a MHPAEA claim with this adjusted argument. Specifically, Plaintiffs would like to do more discovery regarding the documents mentioned in ECF No. 17 ¶ 21 and then amend their complaint to include a MHPAEA claim pleading disparate facility language. However, Defendants have informed Plaintiffs and the court that those desired documents do not exist – that, in fact, the benefits determinations were solely based on the language of the Plan and that there are no further documents to disclose. Given this declaration, the lack of any other indication that the documents Plaintiffs seek may indeed exist, and that Plaintiffs deficiently pled their MHPAEA claim with what appears to be all the relevant documents the first time – the court does not believe that dismissing without prejudice would be appropriate. Accordingly, the court dismisses Count II of Plaintiffs' Amended Complaint with prejudice.

## CONCLUSION

Based on the above reasoning, the court GRANTS Defendants' partial motion to dismiss, and accordingly dismisses Count II of Plaintiffs' Amended Complaint with prejudice.

DATED this 25th day of April, 2022.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

7